******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# GLORY CHAPEL INTERNATIONAL CATHEDRAL *v.* PHILADELPHIA INDEMNITY INSURANCE COMPANY ET AL.
## (AC 45057)

Alvord, Cradle and Clark, Js.

*Syllabus*

Pursuant to the rule of practice (§ 10-44), "[w]ithin fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading; provided that in those instances where an entire complaint . . . or any count in a complaint . . . has been stricken, and the party whose pleading or a count thereof has been so stricken fails to file a new pleading within that fifteen day period, the judicial authority may, upon motion, enter judgment against said party on said stricken complaint . . . or count thereof."

The plaintiff appealed to this court from the judgment of the trial court striking all counts of its complaint against the defendant insurance company, P Co. The plaintiff filed its original complaint against both P Co. and the individual defendant, B, alleging that B had set fire to a garage adjacent to a church owned by the plaintiff. In their efforts to contain and extinguish the fire, emergency personnel severely damaged portions of the church. The complaint alleged that, at the time of the fire and resulting damage, the plaintiff was insured against such damage pursuant to an insurance policy issued by P Co. The plaintiff filed a claim with P Co., and a dispute ensued when P Co. allegedly paid amounts that were inadequate to compensate the plaintiff for the actual costs of repairs. The plaintiff's complaint contained two counts against P Co., claiming breach of contract and breach of an implied covenant of good faith and fair dealing, and one count alleging negligence against B. P Co. filed a motion to strike the two claims against it on the ground of misjoinder, arguing that the plaintiff's contractual claims against P Co. and its negligence claim against B were separate actions that did not arise out of the same transaction. The trial court granted P Co.'s motion to strike counts one and two of the complaint for misjoinder, concluding that, although the fire and its consequences were common facts to the plaintiff's claims against both defendants, that was insufficient to characterize the claims as arising out of the same transaction or transactions connected with the same subject of action. The plaintiff subsequently filed a substitute complaint pursuant to Practice Book § 10-44 that asserted only its two claims against P Co. P Co. filed an objection to the substitute complaint, arguing that P Co. had been dropped from the action and was no longer a party and that the plaintiff was therefore required to proceed only against B. The trial court sustained P Co.'s objection and, upon the plaintiff's motion, rendered judgment for P Co. on the two stricken counts against it. More than six months after the plaintiff had appealed to this court, the plaintiff filed an offer of compromise in the trial court offering to resolve the entirety of its claims against P Co. P Co. filed an objection, arguing that the plaintiff's purported offer of compromise was invalid because P Co. was no longer a defendant in the action, as judgment had been rendered in its favor and, accordingly, there were no claims pending in the litigation against it to settle. The court sustained P Co.'s objection, and the plaintiff subsequently amended its appeal to include the trial court's decision sustaining P Co.'s objection. *Held*:

1. The plaintiff could not prevail on its claim that the trial court erroneously granted P Co.'s motion to strike certain counts of the plaintiff's complaint on the basis of misjoinder: the plaintiff waived its right to appeal the merits of the court's order on the motion to strike when it elected to exercise its right to file a substitute complaint pursuant to Practice Book § 10-44; moreover, although the plaintiff argued that the waiver rule was inapplicable because the trial court rejected its substitute complaint and therefore prevented it from exercising its right to file a substitute pleading, once the plaintiff filed its substitute complaint, that

pleading became the controlling complaint by operation of law, the plaintiff provided no precedent in support of the proposition that waiver occurs only if a court accepts a substitute pleading, and the plaintiff may instead challenge the court's ruling striking the substitute complaint.

2. The trial court improperly sustained P Co.'s objection to the plaintiff's substitute complaint and rendered judgment in favor of P Co.: contrary to P Co.'s unsupported argument that it was automatically dropped from the action upon the trial court's granting of its motion to strike, nothing in the court's order granting such motion suggested that P Co. had been dropped from the action altogether, that the court was exercising any authority under the statute (§ 52-108) governing misjoinder to drop P Co. from the action or that the interests of justice so required; moreover, P Co.'s argument that Practice Book § 10-44 precluded the plaintiff from filing a substitute pleading was unavailing, as such a rule, on the contrary, would operate to deprive a plaintiff of his or her right to file a new pleading pursuant to § 10-44 to cure the defects that served as the basis for striking the complaint; furthermore, although P Co. contended that there is no authority that permits a plaintiff to choose which defendants or causes of action to drop from the case when repleading pursuant to § 10-44 to cure misjoinder, this court's construction of § 10-44 was consistent with the bedrock principle that a plaintiff is the master of his or her own complaint, and allowing a plaintiff to file a substitute pleading against whichever defendant a plaintiff chooses after a complaint has been stricken for misjoinder properly affords the plaintiff the latitude to decide which theories of recovery to pursue against which defendants in that action and to weigh the risks of proceeding with certain claims in a separate action.

3. The plaintiff could not prevail on its claim that the trial court improperly sustained P Co.'s objection to the plaintiff's offer of compromise: the statute (§ 52-192a) governing offers of compromise required the plaintiff to file its offer of compromise while claims remained pending against P Co. in the trial court and prior to the court rendering judgment for P Co., and, because judgment had been rendered for P Co. on all counts, the offer of compromise directed to P Co. was not capable of settling the claim underlying the action because that claim had already been resolved for P Co.; moreover, when the provisions of § 52-192a are read together and construed with reasonable strictness for the party to whom an offer of compromise has been made, such provisions clearly contemplate a process of making and accepting offers of compromise in the trial court prior to a court's resolution of the claims that are the subject of the offer of compromise, and allowing plaintiffs to make offers of compromise to defendants after judgment has been rendered for those defendants and while the claims are on appeal does not serve the purpose of promoting the public policy favoring the pretrial resolution of disputes but, rather, such an interpretation would require a defendant who has already prevailed in the trial court to accept a postjudgment offer of compromise in order to avoid the punitive consequences of the statute, which would expose the party that actually prevailed in the trial court to the punitive effects of the statute; furthermore, where there is an ambiguity with respect to the provisions of § 52-192a, this court must interpret the statute in favor of the party who would be subject to the punitive consequences of the statute rather than in favor of the party who would benefit from those consequences, there is no language in the statute suggesting that the legislature intended to permit a plaintiff to file an offer of compromise directed to a defendant for whom judgment already has been rendered and while a plaintiff pursues an appeal of that judgment, and, in the absence of clear evidence that the legislature intended offers to be made in such circumstances, this court declined to interpret § 52-192a in such a manner.

Argued January 10—officially released April 2, 2024

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Noble, J.*, granted the named defendant's motion to strike; thereafter, the plaintiff filed a substitute complaint; subsequently, the court, *Sheridan, J.*, sustained

the named defendant's objection to the substitute complaint; thereafter, the court, *Sheridan, J.*, granted the plaintiff's motion for judgment as to the named defendant and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed in part; further proceedings*.

*James J. Healy*, with whom was *Leonard M. Isaac*, for the appellant (plaintiff).

*Linda L. Morkan*, with whom were *Steven O. Clancy* and *Scott T. Garosshen*, for the appellee (named defendant).

*Opinion*

CLARK, J. The plaintiff, Glory Chapel International Cathedral (Glory Chapel), appeals from the judgment of the trial court rendered in favor of the defendant Philadelphia Indemnity Insurance Company (Philadelphia Indemnity), striking all counts of Glory Chapel's complaint against Philadelphia Indemnity.[1] On appeal, Glory Chapel claims that (1) the court erred in striking its original complaint on the basis of misjoinder, (2) even if the claims in its original complaint were properly stricken, the court erred by rejecting the substitute complaint that it filed pursuant to Practice Book § 10-44,[2] and (3) the court erred by sustaining Philadelphia Indemnity's objection to an offer of compromise that Glory Chapel filed during the pendency of this appeal. For the reasons that follow, we agree with Glory Chapel on its second claim that the trial court improperly rejected its substitute complaint, but we disagree with it on its other claims. Accordingly, we affirm in part and reverse in part the judgment of the trial court.

We begin with relevant facts and procedural history of the case. In September, 2019, Glory Chapel commenced this action by writ of summons and complaint against Philadelphia Indemnity and Kevon Bennett. The complaint alleged that Bennett set fire to a garage adjacent to a church owned by Glory Chapel located at 221 Greenfield Street in Hartford. In their efforts to contain and extinguish the fire, emergency personnel stationed some equipment and personnel on the roof of the church, using large quantities of water to extinguish the fire and protect surrounding property. Despite the best efforts of emergency responders, portions of the church were greatly damaged by fire, water, and smoke. The complaint alleges that, at the time of the resulting damage, the church was insured against that damage pursuant to an insurance policy issued by Philadelphia Indemnity. Glory Chapel filed a claim with Philadelphia Indemnity and a dispute ensued when Philadelphia Indemnity allegedly paid amounts that were inadequate to compensate Glory Chapel for the true costs of repairs. Glory Chapel's complaint contains three counts: counts one and two respectively claim breach of contract and breach of an implied covenant of good faith and fair dealing against Philadelphia Indemnity and count three alleges a claim of negligence against Bennett.

On November 12, 2019, Philadelphia Indemnity filed a motion to strike the two claims against it on the ground of misjoinder, arguing that by bringing those counts and the count against Bennett in a single complaint, Glory Chapel improperly joined (1) its contractual coverage dispute with Philadelphia Indemnity stemming from Philadelphia Indemnity's alleged failure to pay insurance benefits in accordance with the policy and other purported claims handling issues with (2) its negligence action against Bennett for allegedly causing

the subject fire. Philadelphia Indemnity argued that Glory Chapel's claims are "separate actions that do not arise out of the same transaction, and keeping them joined could lead to prejudice and confusion as this case progresses."

On January 2, 2020, Glory Chapel filed its objection to the motion to strike. It argued that the motion to strike lacked merit because the claims raised by Glory Chapel against both defendants arose out of the destruction of Glory Chapel's property by fire. Glory Chapel argued, among other things, that if the "court were to construe the meaning of transaction so narrowly as to find a breach of insurance contract claim arising from the casualty to be a different transaction than the casualty itself, it would require the parties to file separate lawsuits against their insurers and the tortfeasors in every case where an insurer promised to protect a policyholder from the damages that result from a casualty loss caused by a third party. Such a holding would require, for example, a plaintiff injured in a car accident to bring separate suits against his or her underinsured motorist carrier and the tortfeasor." Glory Chapel further argued that Philadelphia Indemnity's contention that its claims should be brought in a separate suit "not only requires parties to pursue discovery of the same damages in two separate suits, but it also adds as a possibility a need for a third suit if Philadelphia [Indemnity] thereafter decides to assert subrogation claims against the tort [defendant]. [Philadelphia Indemnity's] motion to strike on joinder grounds thus urges the court to enter a ruling that would not only require the parties to conduct largely identical discovery in separate suits but would impair the ability of the tort defendant to try to resolve all claims arising from his misconduct in one suit."

On January 29, 2021, the court, *Noble, J.*, granted Philadelphia Indemnity's motion to strike counts one and two of the complaint for misjoinder, concluding that the claims against Philadelphia Indemnity did not arise out of the same transaction connected with the same subject of action as the tort claim against Bennett. The court stated, inter alia, that "Glory Chapel's claim against [Philadelphia Indemnity] involves issues of contractual coverage and claims handling which are completely independent of Bennett's claimed negligence in causing the initial fire. While the fire and its consequences are common facts to both, this is insufficient to characterize the claims as the 'same transaction or transactions connected with the same subject of action.'"

On February 16, 2021, Glory Chapel filed a substitute complaint pursuant to Practice Book § 10-44 that only asserted claims against Philadelphia Indemnity sounding in breach of contract and breach of an implied covenant of good faith and fair dealing. Unlike the original complaint, the substitute complaint did not assert

any claims against Bennett.

On February 25, 2021, Philadelphia Indemnity filed an objection to the substitute complaint, arguing that Philadelphia Indemnity was no longer a party to the action. Philadelphia Indemnity claimed that, pursuant to the court's decision striking the claims against it on the basis of misjoinder, it had been dropped from the action, requiring Glory Chapel to proceed only against Bennett.

On September 28, 2021, the court, *Sheridan, J.*, sustained Philadelphia Indemnity's objection. The order stated: "Docket entry #126, if filed as a substitute complaint or as an amended complaint, is inconsistent with the court's prior ruling on the motion to strike. A proper substitute complaint must be filed within thirty days of this order."

On October 18, 2021, following Glory Chapel's motion for judgment pursuant to Practice Book § 10-44, the court, *Sheridan, J.*, rendered judgment in favor of Philadelphia Indemnity on the two stricken counts against it. Glory Chapel appealed to this court the following day.

I

Glory Chapel first claims that the trial court erroneously granted Philadelphia Indemnity's motion to strike on the basis of misjoinder. Glory Chapel argues that a plaintiff's complaint may join claims against multiple defendants arising from the same "subject of action" and that its claims against Philadelphia Indemnity and Bennett arose from the very same subject of action—the fire that destroyed the church's roof and other property. Specifically, Glory Chapel claims that the tort claim against Bennett and its contractual claims against Philadelphia Indemnity both turn on an evaluation of the very same roof damage caused by the very same fire. Philadelphia Indemnity argues both that the court properly struck counts one and two of the original complaint and that Glory Chapel waived its right to appeal the merits of the court's order striking those counts when it filed its substitute complaint. We agree with Philadelphia Indemnity that Glory Chapel waived its right to appeal from the court's order striking counts one and two of the original complaint when it elected to exercise its right to file a substitute complaint pursuant to Practice Book § 10-44.

Our standard of review is well known. "Construction of the effect of pleadings is a question of law and, as such, our review is plenary." *Ross* v. *Forzani*, 88 Conn. App. 365, 368, 869 A.2d 682 (2005).

Our case law makes clear that by filing a substitute complaint, "a plaintiff is said to have *waived* the right to appeal from the court's order striking the original complaint." (Emphasis added.) *O'Donnell* v. *AXA Equitable Life Ins. Co.*, 210 Conn. App. 662, 670, 270 A.3d 751, cert. granted, 343 Conn. 910, 273 A.3d 695 (2022);

see also *Royce* v. *Westport*, 183 Conn. 177, 179, 439 A.2d 298 (1981). Indeed, "[a]fter a court has granted a motion to strike, [the plaintiff] may either amend his pleading [pursuant to Practice Book § 10-44] or, on the rendering of judgment, file an appeal. . . . The choices are mutually exclusive . . . ." (Internal quotation marks omitted.) *Lund* v. *Milford Hospital, Inc.*, 326 Conn. 846, 850, 168 A.3d 479 (2017). But once the plaintiff files a substitute complaint, "the ruling on the [original motion to strike] ceases to be an issue." (Internal quotation marks omitted.) *Ross* v. *Forzani*, supra, 88 Conn. App. 369.

Notwithstanding the foregoing, Glory Chapel argues that the waiver rule should not apply in this case because the trial court rejected its substitute complaint and therefore prevented it from exercising its right to file a substitute pleading. It claims that "waiver does not arise merely upon filing a substitute complaint after a ruling granting a motion to strike. . . . Rather, it is once the amendment has bec[o]me the controlling pleading and the earlier one [is] removed from the case that the plaintiff has waived the right to appeal the previous pleading." (Citation omitted; emphasis omitted; internal quotation marks omitted.) Glory Chapel fails to recognize, however, that once it filed its substitute complaint, that pleading became the controlling complaint by operation of law, regardless of whether or not the court ultimately accepted its argument that the substitute pleading cured the defect in the earlier complaint. Glory Chapel has not provided us with any precedent in support of the proposition that waiver occurs only if a court accepts a substitute pleading. On the contrary, the great weight of our case law says that the *filing* of a substitute pleading after the original pleading is stricken serves as the waiver to challenge the granting of the motion to strike. See, e.g., *Royce* v. *Westport*, supra, 183 Conn. 177–78 ("The plaintiffs had, however, in the meantime timely pleaded over after the sustaining of the demurrer by *filing* a substitute complaint on September 19, 1978. . . . According to the Practice Book [1978] § 158 [now Practice Book § 10-45], this new September complaint became the controlling pleading and the earlier one was removed from the case." (Citation omitted; emphasis added.)); *Good Humor Corp.* v. *Ricciuti*, 160 Conn. 133, 135, 273 A.2d 886 (1971) ("[t]he *filing* of an amended pleading operates as a waiver of the right to claim that there was error in the sustaining of the demurrer to the original pleading" (emphasis added)).

Although the filing of a substitute complaint operates as a waiver of the right to claim that there was error in the court's order striking the original complaint, should the court subsequently reject or strike the substitute complaint, a plaintiff generally may challenge that decision on appeal. See, e.g., *O'Donnell* v. *AXA Equitable Life Ins. Co.*, supra, 210 Conn. App. 670–71 ("[i]f the plaintiff pleads facts in the substitute complaint

which are materially different from those in the original complaint, then . . . the plaintiff can challenge the merits of the court's ruling striking the [substitute] complaint" (citation omitted; internal quotation marks omitted)). Accordingly, we conclude that Glory Chapel waived its right to appeal the merits of the court's order striking its original complaint when it filed its substitute complaint in this action.[3]

## II

Glory Chapel next claims that, regardless of whether the court properly struck counts one and two of its original complaint on the basis of misjoinder, reversal is required because the court improperly rejected its substitute complaint. In particular, Glory Chapel contends that the court erred in accepting Philadelphia Indemnity's argument that the court's order striking all counts against Philadelphia Indemnity resulted in Philadelphia Indemnity being dropped from the case. Glory Chapel claims that Practice Book § 10-44 afforded it the right to file a substitute pleading within fifteen days after the granting of the motion to strike to cure any deficiencies in that initial complaint. It further contends that, in the context of an order striking a complaint for misjoinder, § 10-44 affords it the right to decide which claims to assert against which defendants. We agree.[4]

As previously explained, "[c]onstruction of the effect of pleadings is a question of law and, as such, our review is plenary." *Ross* v. *Forzani*, supra, 88 Conn. App. 368. To the extent the present claim requires us to interpret the trial court's order or our rules of practice, our review is also plenary. See *Barclays Bank Delaware* v. *Bamford*, 213 Conn. App. 1, 12, 277 A.3d 151 ("[t]he interpretation and application of a statute, and thus a Practice Book provision, involves a question of law over which our review is plenary" (internal quotation marks omitted)), cert. denied, 345 Conn. 905, 282 A.3d 982 (2022); *Clark* v. *Clark*, 150 Conn. App. 551, 569 n.12, 91 A.3d 944 (2014) ("[t]he construction of an order is a question of law over which we exercise plenary review" (internal quotation marks omitted)).

Two or more causes of action may be joined in a single complaint. See General Statutes § 52-97; Practice Book § 10-21. Section 52-97 provides in relevant part that, "if several causes of action are united in the same complaint, they shall all be brought to recover, either . . . upon claims, whether in contract or tort or both, arising out of the same transaction or transactions connected with the same subject of action," provided that the joined claims "affect all the parties to the action . . . ." Practice Book § 10-39 (a) provides in relevant part: "A motion to strike shall be used whenever any party wishes to contest . . . the joining of two or more causes of action which cannot properly be united in one complaint, whether the same be stated in one or

more counts . . . ." Practice Book § 11-3 similarly makes clear that "[t]he exclusive remedy for misjoinder of parties is by motion to strike."

If a party's pleading is stricken, Practice Book § 10-44 provides in relevant part that "[w]ithin fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading; provided that in those instances where an entire complaint, counterclaim or cross complaint, or any count in a complaint, counterclaim or cross complaint has been stricken, and the party whose pleading or a count thereof has been so stricken fails to file a new pleading within that fifteen day period, the judicial authority may, upon motion, enter judgment against said party on said stricken complaint, counterclaim or cross complaint, or count thereof. . . ."

One obvious purpose of Practice Book § 10-44 is to provide the party whose pleading was previously stricken the opportunity to remedy the defects identified by the trial court in granting the earlier motion to strike. See *Lund* v. *Milford Hospital, Inc.*, supra, 326 Conn. 850. Indeed, after a party files a substitute complaint, "[t]he law in this area requires the court to compare the two complaints to determine whether the amended complaint 'advanced the pleadings' by remedying the defects identified by the trial court in granting the earlier motion to strike." Id., 851.

In the present case, Glory Chapel filed its substitute complaint within fifteen days of the court's order granting Philadelphia Indemnity's motion to strike counts one and two of its original complaint. Glory Chapel sought to cure any defects arising from misjoinder by asserting in its substitute complaint only the two counts against Philadelphia Indemnity. Glory Chapel omitted the claim it previously had asserted against Bennett.

Philadelphia Indemnity filed an objection to the substitute complaint claiming that upon the court's decision striking all counts asserted against it, Philadelphia Indemnity was "dropped" from the litigation. Philadelphia Indemnity therefore argued to the court that Glory Chapel's substitute complaint asserting two claims against it did not comply with the court's prior order granting the motion to strike. The court, *Sheridan, J.*, sustained Philadelphia Indemnity's objection, stating that Glory Chapel's substitute complaint was "inconsistent with the court's prior ruling on the motion to strike." Upon motion of Glory Chapel, the court thereafter rendered judgment in favor of Philadelphia Indemnity on the two stricken counts.

On the basis of our review, we conclude that the court's decision sustaining Philadelphia Indemnity's objection to Glory Chapel's substitute complaint and subsequently rendering judgment in favor of Philadelphia Indemnity was improper. Nothing in the court's order

striking counts one and two of the original complaint suggested, much less held, that Philadelphia Indemnity had been "dropped" from the action altogether or that Glory Chapel was precluded from filing a substitute pleading pursuant to Practice Book § 10-44. The court's order granting the motion to strike simply provided that, because "Glory Chapel's claim[s] against [Philadelphia Indemnity] do not arise out of the same transaction or transactions connected with the same subject of action as the tort claim against Bennett, the *motion to strike counts one and two* [*is*] *granted*."[5] (Emphasis added.) Although we recognize that "[n]ew parties may be added and summoned in, and parties misjoined may be dropped, by order of the court, at any stage of the action, as the court deems the interests of justice require"; General Statutes § 52-108;[6] nothing in the court's decision granting the motion to strike indicated that it was exercising any authority under § 52-108 to drop Philadelphia Indemnity from the action or that the interests of justice so required.

Furthermore, we are not persuaded by Philadelphia Indemnity's argument that it was automatically dropped from the action upon Judge Noble's granting of its motion to strike. Philadelphia Indemnity cites no cases, and we are unaware of any, in which a court has held that an order granting a motion to strike certain counts of a complaint on the basis of misjoinder automatically drops or otherwise removes the moving party from the action. On the contrary, such a rule would operate to deprive a plaintiff of his or her right to file a new pleading pursuant to Practice Book § 10-44 to cure the defects that served as the basis for striking the complaint. See *Garden Homes Profit Sharing Trust, L.P.* v. *Cyr*, 189 Conn. App. 75, 85, 206 A.3d 230 (2019) (concluding that court improperly rendered judgment immediately after finding of nonjoinder "without affording the plaintiff notice and at least fifteen days to add [a necessary party] to the action" pursuant to § 10-44).

Our rules of practice instead make clear that when a defendant's motion to strike is granted on the basis of misjoinder, the plaintiff is afforded the right to file a new pleading pursuant to Practice Book § 10-44 so as to cure the defect or, on the rendering of judgment, to file an appeal. See *Lund* v. *Milford Hospital, Inc.*, supra, 326 Conn. 850. By electing to replead pursuant to § 10-44 to cure misjoinder, a plaintiff may, for example, allege new facts that sufficiently link the causes of action together or, as Glory Chapel did here, elect to proceed by asserting causes of action against just one of the defendants in the original complaint. See id., 851 n.4 ("[a]n example of a proper pleading filed pursuant to . . . § 10-44 is one that [supplies] the essential allegation lacking in the complaint that was stricken" (internal quotation marks omitted)); *Fairfield* v. *Southport National Bank*, 77 Conn. 423, 427, 59 A. 513 (1904) ("Had the other defendants been dropped, the misjoin-

der complained of would have disappeared from the case. . . . We think the court, even upon its own assumption as to misjoinder, erred in rendering judgment as it did.); *Ferreira* v. *Estevam*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 37 47 06 (November 7, 1990) (2 Conn. L. Rptr. 712, 713) ("The granting of a motion to strike invites the losing party to file a new pleading in order to cure the defect. In the context of this case, it would permit the plaintiff either to allege facts which might link the misjoined causes of action or to elect which cause of action should remain in the original complaint and which should form the basis of a new complaint.").

Although Philadelphia Indemnity contends that there is no authority that permits a plaintiff to choose which defendants or causes of action to drop from the case when repleading pursuant to Practice Book § 10-44 to cure misjoinder, our construction of § 10-44 is consistent with the bedrock principle that a plaintiff is the master of his or her own complaint. See *Reclaimant Corp.* v. *Deutsch*, 332 Conn. 590, 607 n.11, 211 A.3d 976 (2019) ("[a]s the master of the complaint, the plaintiff is free to decide what theory of recovery to pursue"). Accordingly, we see no reason why a plaintiff ought to be precluded from choosing how best to amend his or her complaint pursuant to § 10-44 to cure the defects that serve as the basis for a court's decision striking a complaint on the basis of misjoinder. Allowing a plaintiff to file a substitute pleading against whichever defendant a plaintiff chooses to proceed against after a complaint has been stricken for misjoinder properly affords the plaintiff the latitude to decide which theories of recovery to pursue against which defendants in that action and to weigh the risks of proceeding with certain claims in a separate action.[7]

Here, Judge Noble concluded that Glory Chapel's claims against Philadelphia Indemnity did not arise out of the same transaction or transactions connected with the same subject of action as the tort claim against Bennett. After Judge Noble granted Philadelphia Indemnity's motion to strike, Glory Chapel timely filed a substitute complaint pursuant to Practice Book §10-44, which clearly cured the misjoinder defects identified by the court by omitting any claims against one of the purportedly misjoined defendants. Contrary to Judge Sheridan's conclusion, Glory Chapel's substitute complaint was not inconsistent with Judge Noble's decision striking the counts against Philadelphia Indemnity. Accordingly, we conclude that the court erred when it rejected Glory Chapel's substitute complaint.[8]

### III

Glory Chapel's final claim is that the trial court improperly sustained Philadelphia Indemnity's objection to the offer of compromise that it filed more than six months after the trial court rendered judgment in

favor of Philadelphia Indemnity and while this appeal was pending. It contends that General Statutes § 52-192a permits a plaintiff to file an offer of compromise directed to a defendant during the pendency of an appeal when judgment has already been rendered by the trial court in favor of that defendant on all counts. We are not persuaded.

The following procedural history is relevant to this claim. On October 18, 2021, after the court, *Sheridan, J.*, rejected Glory Chapel's substitute complaint, the court granted Glory Chapel's motion for judgment and rendered judgment in favor of Philadelphia Indemnity. On October 19, 2021, Glory Chapel filed with this court its appeal of that judgment. On April 25, 2022, while this appeal was pending, Glory Chapel filed an offer of compromise in the Superior Court stating that "[Glory Chapel] hereby offers to resolve the entirety of its claim against [Philadelphia Indemnity] by way of compromise settlement in the sum of [$675,000], including interest and costs."

On May 25, 2022, Philadelphia Indemnity filed an objection to Glory Chapel's offer of compromise, arguing that Glory Chapel's purported offer of compromise was invalid because Philadelphia Indemnity was no longer a defendant in the action, as judgment had been rendered in its favor. Philadelphia Indemnity argued that there were no claims pending in the litigation against it to settle and that this was just another attempt by Glory Chapel to "cause annoyance, oppression, undue burden, and expense." Philadelphia Indemnity also requested that the court award it reasonable attorney's fees and costs associated with filing its objection.

On June 13, 2022, the court, *Cobb, J.*, sustained Philadelphia Indemnity's objection to Glory Chapel's offer of compromise. On June 16, 2022, Glory Chapel amended its appeal to include the court's decision sustaining Philadelphia Indemnity's objection to its offer of compromise.

Our resolution of this claim turns on an interpretation of § 52-192a. It is well established that statutory construction is a question of law over which we exercise plenary review. See, e.g., *Larmel* v. *Metro North Commuter Railroad Co.*, 341 Conn. 332, 339, 267 A.3d 162 (2021); *Nunno* v. *Wixner*, 257 Conn. 671, 677, 778 A.2d 145 (2001). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is

plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Cerame* v. *Lamont*, 346 Conn. 422, 426, 291 A.3d 601 (2023).

Glory Chapel contends that the fundamental purpose of § 52-192a is to encourage prompt settlements and to avoid wasting judicial resources. It claims that the plain language of the statute permits a party to file an offer of compromise during an appeal from a pretrial ruling and that prohibiting offers of compromise in such circumstances would run contrary to the purpose of the statute. Philadelphia Indemnity disagrees. It claims that there is no authority supporting Glory Chapel's claim that the statute permits a party to file a postjudgment offer of compromise, and the "better interpretation" is that § 52-192a forbids it. We agree with Philadelphia Indemnity and conclude that § 52-192a does not permit a plaintiff to file an offer of compromise directed to a defendant for whom judgment has already been rendered.

We begin with the text of § 52-192a. Subsection (a) of that statute provides in relevant part: "Except as provided in subsection (b) of this section, after commencement of any civil action based upon contract or seeking the recovery of money damages, whether or not other relief is sought, the plaintiff may, not earlier than one hundred eighty days after service of process is made upon the defendant in such action but not later than thirty days before trial, file with the clerk of the court a written offer of compromise signed by the plaintiff or the plaintiff's attorney, directed to the defendant or the defendant's attorney, offering to settle the claim underlying the action for a sum certain. . . ." General Statutes § 52-192a (a).

Subsection (a) further provides that, "[w]ithin thirty days after being notified of the filing of the offer of compromise and prior to the rendering of a verdict by the jury or an award by the court, the defendant or the defendant's attorney may file with the clerk of the court a written acceptance of the offer of compromise agreeing to settle the claim underlying the action for the sum certain specified in the plaintiff's offer of compromise. . . . Any such offer of compromise and any acceptance of the offer of compromise shall be included by the clerk in the record of the case." General Statutes § 52-192a (a). Subsection (c) of § 52-192a provides in relevant part that "[a]fter trial[9] the court shall examine the record to determine whether the plaintiff made an offer of compromise which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain specified in the plaintiff's offer of compromise, the court shall add to the amount so recovered eight per cent annual interest on said amount . . . ."

(Footnote added.)

Glory Chapel contends that because the statute authorizes a plaintiff to file an offer of compromise any time after 180 days following service of process and up until thirty days before trial, its April 25, 2022 offer was timely filed because "[t]he case obviously has not yet proceeded to 'trial' . . . ."

Philadelphia Indemnity counters that Glory Chapel engages in a hyper technical construction of the statute. It points to the language in § 52-192a (a) stating that a plaintiff's offer of compromise is to settle the " 'claim underlying the action . . . .' " In Philadelphia Indemnity's view, after judgment had been rendered for it, there was no longer any "claim underlying the action" that could be settled because those claims had already been resolved in its favor. As a result, it argues that Glory Chapel's offer of compromise was invalid and properly stricken by the court.

Section 52-192a is silent as to whether a plaintiff may file an offer of compromise after judgment has been rendered for a defendant on all claims in the trial court and during the pendency of an appeal. In reviewing the statute and the parties' competing arguments, we conclude that the statute is not clear and unambiguous on this point. See, e.g., *Branford* v. *Santa Barbara*, 294 Conn. 803, 812, 988 A.2d 221 (2010) ("[t]he test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation" (internal quotation marks omitted)).

Although we often look to the legislative history of a statute to discern its meaning when its language is ambiguous, we have found nothing in the legislative history of § 52-192a that sheds light on the precise question presented here. The body of case law interpreting various provisions of § 52-192a, however, lends some assistance for present purposes. See *Stiffler* v. *Continental Ins. Co.*, 288 Conn. 38, 43, 950 A.2d 1270 (2008) ("we note that we are not writing on a clean slate as the purpose and structure of our offer of judgment statute have been identified"). To that end, in construing § 52-192a, our Supreme Court has explained "that its purpose is to encourage pretrial settlements and, consequently, to conserve judicial resources." *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 742, 687 A.2d 506 (1997). "[T]he strong public policy favoring the pretrial resolution of disputes . . . is substantially furthered by encouraging defendants to accept reasonable offers of judgment." (Internal quotation marks omitted.) *Yeager* v. *Alvarez*, 302 Conn. 772, 783, 31 A.3d 794 (2011), citing *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 153, 998 A.2d 730 (2010). The statute "encourages fair and reasonable compromise between litigants by penalizing a party that fails to accept a reasonable offer of settlement." (Internal quotation marks omitted.) *Cardenas*

v. *Mixcus*, 264 Conn. 314, 321, 823 A.2d 321 (2003). "The statute is admittedly punitive in nature," but "[i]t is the punitive aspect of the statute that effectuates the underlying purpose of the statute and provides the impetus to settle cases." (Internal quotation marks omitted.) *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, supra, 752, quoting *Lutynski* v. *B. B. & J. Trucking, Inc.*, 31 Conn. App. 806, 812–13, 628 A.2d 1 (1993), aff'd, 229 Conn. 525, 642 A.2d 7 (1994). Because § 52-192a is punitive in nature, our case law instructs that "we are required to construe it with reasonable strictness . . . ." (Emphasis omitted; internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 149; see also *Barton* v. *Norwalk*, 163 Conn. App. 190, 218, 135 A.3d 711 (2016), aff'd, 326 Conn. 139, 161 A.3d 1264 (2017). Indeed, when ambiguity exists, "we must interpret it in favor of the party who would be subject to the punitive consequences of the statute rather than in favor of the party who would benefit from those consequences." *Branford* v. *Santa Barbara*, supra, 294 Conn. 814–15.

With these principles in mind, and for the reasons that follow, we conclude that, although § 52-192a permits a plaintiff to file an offer of compromise not later than thirty days before trial, it also requires a plaintiff to file its offer of compromise while claims remain pending against a defendant in the trial court and prior to the court rendering judgment in favor of that defendant. First, as Philadelphia Indemnity points out, the statute makes clear that an offer of compromise is an offer "*to settle the claim underlying the action* . . . ." (Emphasis added.) General Statutes § 52-192a (a). Where, as here, judgment has been rendered for a defendant on all counts, an offer of compromise directed to such defendant is not capable of settling the "claim underlying the action" because that claim has already been resolved in favor of the defendant. In other words, once a judgment has been rendered for a defendant, there is no longer a "claim underlying the action" for purposes of the statute. Furthermore, the statute instructs that an offer of compromise and a defendant's written acceptance must be filed "with the clerk of the court" and "shall be included by the clerk in the record of the case." General Statutes § 52-192a (a). Any written acceptance of the offer of compromise must be filed "[w]ithin thirty days after being notified of the filing of the offer of compromise and *prior to the rendering of a verdict by the jury or an award by the court* . . . ." (Emphasis added.) General Statutes § 52-192a (a).

These provisions, when read together and construed with reasonable strictness in favor of the party to whom an offer of compromise is made; see, e.g., *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 297 Conn. 149; contemplate a process of making and accepting offers of compromise in the trial court prior to a court's resolution of the claims that are the subject

of the offer of compromise. As we have explained, the statute embodies a strong public policy favoring the *pretrial* resolution of disputes—that is, resolution of the claims by the parties before the court or a jury resolves those claims. Allowing plaintiffs to make offers of compromise to defendants after judgment has been rendered for those defendants and while the claims are on appeal does not serve the purpose of promoting *pretrial* resolutions. On the contrary, such an interpretation would require a defendant who has already prevailed in the trial court to accept a postjudgment offer of compromise in order to avoid the punitive consequences of the statute. Far from promoting the chief policy goal of the statute, such an interpretation would expose the party that actually prevailed in the trial court to the punitive effects of the statute. As noted, our Supreme Court has held that where there is an ambiguity with respect to the provisions of § 52-192a, "we must interpret it in favor of the party who would be subject to the punitive consequences of the statute rather than in favor of the party who would benefit from those consequences." *Branford* v. *Santa Barbara*, supra, 294 Conn. 814–15.

We therefore conclude that § 52-192a requires that an offer of compromise be filed while claims remain pending against a defendant in the trial court and prior to the time judgment has been rendered for that defendant. See General Statutes § 52-192a (a). There simply is no language in the statute suggesting that the legislature intended to permit a plaintiff to file an offer of compromise directed to a defendant for whom judgment already has been rendered and while a plaintiff pursues an appeal of that judgment. In the absence of clear evidence that the legislature intended offers to be made in such circumstances, we decline to interpret the statute in such a manner. See *Branford* v. *Santa Barbara*, supra, 294 Conn. 815 ("in the absence of clear evidence that the legislature intended the offer of judgment statute to apply to condemnation appeals prior to 2007, we cannot impose the consequences of § 52-192a on the town in the present case"). Accordingly, we conclude that the trial court properly sustained Philadelphia Indemnity's objection to Glory Chapel's postjudgment offer of compromise.[10]

The judgment is reversed with respect to the order sustaining Philadelphia Indemnity's objection to the substitute complaint and the case is remanded for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The complaint also named Kevon Bennett as a defendant. Bennett did not appear in the trial court and is not participating in this appeal.

[2] We note that the subject pleading was actually labeled by the plaintiff as "Amended Complaint." However, because Practice Book § 10-44 governs "Substitute Pleading[s]," we refer to the subject complaint throughout this opinion as the "substitute complaint" to avoid confusion with other rules of practice pertaining to the amendment or revision of pleadings.

[3] We take no position with respect to whether the court properly struck counts one and two of the original complaint on the basis of misjoinder.

[4] We note that Philadelphia Indemnity argues that Glory Chapel did not properly preserve this claim for appeal because it did not argue in its opposition to the initial motion to strike that it had the sole right to decide which defendant to drop from the case. This claim lacks merit. Philadelphia Indemnity's argument effectively would require a party opposing a motion to strike to list all possible responses to an adverse ruling in advance of the adverse ruling actually being made. We have found no support in our law for that contention. The record in this case instead shows that Glory Chapel distinctly raised its right to replead and to remove Bennett instead of Philadelphia Indemnity in its response to Philadelphia Indemnity's objection to its substitute complaint. See *Asselin & Vieceli Partnership, LLC* v. *Washburn*, 194 Conn. App. 519, 524, 221 A.3d 875 (2019) ("[t]he determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated [before the trial court] with sufficient clarity to place the trial court on reasonable notice of that very same claim" (internal quotation marks omitted)), cert. denied, 334 Conn. 913, 221 A.3d 449 (2020). Accordingly, we conclude that Glory Chapel has preserved its claim for appeal.

[5] We also note that Philadelphia Indemnity did not request in its motion that it be dropped from the action. Rather, Philadelphia Indemnity's motion to strike provided in relevant part: "WHEREFORE, [Philadelphia Indemnity] respectfully requests that the court strike the first and second counts of . . . Glory Chapel's complaint for misjoinder."

[6] General Statutes § 52-108 provides: "An action shall not be defeated by the nonjoinder or misjoinder of parties. New parties may be added and summoned in, and parties misjoined may be dropped, by order of the court, at any stage of the action, as the court deems the interests of justice require."

[7] During oral argument before this court, counsel for Philadelphia Indemnity conceded that if Philadelphia Indemnity and Bennett had both filed motions to strike for misjoinder, and both had been granted, Glory Chapel would have been entitled to replead against either one of the defendants. See, e.g., *John's Refuse & Recycling, LLC* v. *For Like, LLC*, Superior Court, judicial district of New Haven, Docket No. CV-15-6058890-S (May 10, 2016) (62 Conn. L. Rptr. 302, 303) ("I hereby order that the plaintiff file an amended complaint removing five of the six named defendants from the action. The plaintiff may proceed in this lawsuit with its claims against one of the named defendants."). We see no logical basis for adopting a rule that would arbitrarily reward a defendant that first moves to strike a complaint to the detriment of another defendant that elects instead to file other requests or motions, such as a request to revise or motions to dismiss, which our rules of practice require be filed prior to the filing of a motion to strike.

[8] In light of our disposition, we need not address Glory Chapel's additional claim that the trial court erred by denying its motion to reargue the court's decision sustaining Philadelphia Indemnity's objection to the substitute complaint. See *Doe* v. *West Hartford*, 168 Conn. App. 354, 359 n.5, 147 A.3d 1083 (2016), aff'd, 328 Conn. 172, 177 A.3d 1128 (2018).

[9] In *Tureck* v. *George*, 44 Conn. App. 154, 162, 687 A.2d 1309, cert. denied, 240 Conn. 914, 691 A.2d 1080 (1997), this court concluded that the term "after trial" in § 52-192a (b) means after a "final judgment," holding that a plaintiff is not entitled to obtain prejudgment interest until after a final judgment has been rendered.

[10] Nothing in this opinion should be construed to prohibit Glory Chapel from filing a timely offer of compromise on remand, at which time its claims against Philadelphia Indemnity will have been restored by virtue of our decision in this appeal.